UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO. 1:03-CR-087 |
| ) | |
| JERRY JARRETT ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is briefing related to the Defendant, Jerry Jarrett's ("Jarrett's"), "Request for Production of Documents" [DE 122] originally filed on October 31, 2007 and the court's granting of that motion in an Opinion and Order dated February 4, 2008 [DE 127]. Since that filing and the subsequent Opinion and Order related to it, much time has elapsed and there have been numerous delays including a Government's Petition for Writ of Mandamus filed before the Seventh Circuit Court of Appeals relating to the court's Order on the Request for Production.[1] Finally and after several requests for extension of time, on April 9, 2009 the undersigned received for *in camera* review all the documents ordered to be produced in its February 4, 2008 Order. On June 15, 2009, the undersigned entered a second written Order [DE 157-158] wherein it indicated that the *in camera* review had been completed and designated the documents ordered to be produced to the Defendant. On September 30, 2009, the Government filed its response wherein it indicated that it had provided some but not all of the documents Ordered by the Court. In addition, the Government asserted numerous privileges as to the particular documents it did not provide. [DE 161]. The court then ordered briefing from the parties regarding the propriety of the Government's assertion of privilege.

---

[1] The Petition for Writ of Mandamus was denied on June 10, 2008.

1

The last of those briefs was received on February 22, 2010. For the following reasons, the Court will DENY the Government's assertion of privilege as to all documents.

## DISCUSSION

On December 14, 2004, a jury convicted Jarrett on three counts of money laundering, and particularly of knowingly laundering proceeds from drug transactions, in violation of 18 U.S.C. §1956(a)(1)(B)(i), one count of money laundering in violation of 18 U.S.C. §1957, and two counts of structuring in violation of 31 U.S.C. §5322(b). Prior to trial, Jarrett filed a motion to dismiss the indictment due to vindictive prosecution, which was denied. See Docket # 30 (11/02/04). After his conviction, Jarrett filed a Renewed Motion for Judgment of Acquittal seeking to have his indictment dismissed again based on a theory of vindictive prosecution. After considering the evidence, the undersigned concluded, in a 38 page Order, that there was sufficient evidence to conclude that a vindictive motive underlay the prosecution. (Docket #79, 5/23/2005). The Government appealed. On appeal, the Seventh Circuit Court of Appeals reversed the decision of this court and reinstated the jury verdict after concluding that Jarrett had not proven vindictive prosecution. *United States v. Jarrett,* 447 F.3d 520 (7th Cir. 2006).

In its Opinion, the Seventh Circuit explained:

> When a defendant is challenging his indictment, the presumption of regularity in favor of the government's conduct, combined with the requirement of clear evidence to the contrary and the "rigorous standard" by which such evidence must be evaluated means that a claim of vindictive prosecution is extremely difficult to prove.

*Id. at 526.* The Court then went on to articulate that Jarrett must "affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-

vindication." Ultimately, however, the Court rejected Jarrett's evidence writing:

> Based on our own examination of the record and the factors on which the district court relied, we conclude that the evidence is not legally sufficient to support a finding of vindictiveness.
>
> First, it should be noted that at no point has Jarrett produced any public or private statement by a prosecutor manifesting animus toward him; any document that might establish bad motives on the part of the government; or any similar "smoking gun." And so he builds his case on examples of suspicious timing, speculation about the government's motives, and allegations that the U.S. Attorney's office failed to follow its internal procedures in pursuing his indictment. Similarly, the district court based its finding on the "cumulative weight" of the facts it considered, acknowledging that "any one of these facts might appear suspicious but not indicative of vindictive prosecution." But that reasoning-the whole amounts to more than the sum of its parts-cannot take the place of clear and objective evidence, especially when the standard for vindictive prosecution is so rigorous.

*Id.* at 526-527.

Given the Seventh Circuit's reasoning above, Jarrett, on remand, filed a motion for production seeking to uncover the sort of discriminatory animus and bad motives required by the Seventh Circuit in the "pre-indictment notes, e-mails, memorandum, correspondence with investigatory agencies, correspondence with attorneys for Ripoll and Goode, and any other documents in the possession of the Government." (Request, ¶1).

Throughout this case, Jarrett has consistently maintained that he was vindictively prosecuted in retaliation for exercising his statutory right and duty to provide effective representation to one of his clients, Dr. Jong Hi Bek. In particular, he has asserted that the Government had sufficient evidence to indict him in 1999, after he testified before a grand jury which was investigating his financial transactions with two suspected multi-million dollar drug dealers. Yet, it was only after

3

Jarrett began successfully representing a high profile defendant, Dr. Bek,[2] some three years later, that the Government became interested in pursuing a criminal case against him, sought to have him recused from the Bek case, and when that tactic failed, indicted him in contravention of the United States Attorney's Office own internal policies and procedures. In turn, the Government has consistently maintained that no improper motive led to Jarrett's indictment.

This court has previously articulated the standard required for a defendant to obtain discovery on a claim for vindictive prosecution. As the court set out in its February 4, 2008 Order, Jarrett need only present a "colorable basis" for the claim[3] and the Court concluded that Jarrett had, in fact, demonstrated "some evidence tending to show the essential elements of the [vindictive prosecution] claim." *United States v. Heidecke,* 900 F.2d 1155, 1159 (7th Cir.1990). Thus, the Court held that Jarrett's claim of vindictive prosecution rose beyond the level of unsupported allegations so as to permit him the discovery he sought. *Id. (*citing *United States v. Catlett,* 584 F.2d 864, 865

---

[2]The arrest of Dr. Bek was hailed as a significant law enforcement accomplishment and received extensive media coverage. In April 2003, Jarrett successfully obtained the dismissal of state court felony-murder charges against Bek, due to lack of conclusive toxicology evidence. This generated extensive publicity as well as criticism of the Lake County Prosecutor. Nearly a month later, on May 31, 2003, Jarrett was notified that he was a target of a grand jury investigation.

[3] The Seventh Circuit has explained the rationale behind this requirement as follows:

> In the areas of vindictive prosecution and selective prosecution, a defendant must show a colorable basis for his or her claim before discovery against the government is permitted, *see United States v. Goulding*, 26 F.3d 656, 662 (7th Cir.1994); *United States v. Heidecke*, 900 F.2d 1155, 1159 (7th Cir.1990) .... This standard prevents defendants from unnecessarily imposing enormous administrative costs and delays ... by engaging in extended fishing expeditions to support frivolous challenges. *Cf. Heidecke*, 900 F.2d at 1158-59 (justifying the colorable basis requirement by discussing the need to guard against "allowing claims of vindictive prosecution to mask abusive discovery tactics by defendants" and to "free [ ] the judicial system of criminal trials with irrelevant massive discovery").

*United States v. Utecht*, 238 F.3d 882, 887 -888 (7th Cir. 2001).

(8th Cir.1978)). Accordingly, the Court then ordered the Government to produce documents responsive to the request for an *in camera* review[4] and, subsequently, the Court after reviewing the documents, ordered the Government to produce particular documents to the defense.

The Government has complied with this Court's Order as to many of the documents and has produced those to the defendant. However, the Government asserts that the various documents it has not produced are all subject to one privilege or another. For instance, they assert that any pre-indictment documents are protected by the deliberative process privilege, the work product doctrine, and attorney-client privilege. The Government also argues that the Seventh Circuit's opinion reversing this court's dismissal of the charges against Jarrett as "law of the case," that is, the Government asserts that because the Seventh Circuit has already determined that Jarrett's vindictiveness theory was not legally sufficient, there is no basis for the discovery in the first instance. Thus, according to the Government, it follows that the court's conclusion in its February 4, 2008 Order that Jarrett presented a colorable basis sufficient to permit discovery is erroneous. It is to these arguments that the court now turns.

The Constitution prohibits initiating a prosecution based *solely* on vindictiveness. "[F]or an agent of the [United States] to pursue a course of action whose objective is to penalize a person's reliance on his legal rights" is "a due process violation of the most basic sort...." *Bordenkircher v. Hayes,* 434 U.S. 357, 363 (1978); *Jarrett,* 447 F.3d at 525. However, "the decision as to whether to prosecute generally rests within the broad discretion of the prosecutor, and a prosecutor's pretrial charging decision is presumed legitimate." *United States v. Sanders,* 211 F.3d 711, 716 (2d Cir.),

---

[4]The Government then sought a Writ of Mandamus from the Seventh Circuit Court of Appeals in an effort to have the Court of Appeals order the undersigned to immediately sentence Jarrett. As noted elsewhere, this Writ was DENIED.

(2000). Nonetheless, "a prosecution brought with vindictive motive, penalizing those who choose to exercise constitutional rights, would be patently unconstitutional." *Id.*[5]

Here, the Seventh Circuit in its Order made clear that the standard for proof in these cases is stringent and that Defendants must have at least some objective evidence of a prosecutor's motive. This is precisely what Jarrett is attempting to uncover via the present discovery. Yet, the Government asserts, in essence, that Jarrett is barred from uncovering evidence of the prosecutor's motive due to various discovery privileges, such as the deliberative process privilege.

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir.1993). The privilege proscribes to protect "frank discussion of legal and policy matters [that are] essential to the decision-making process of a governmental agency." *Id.*[6] If the privilege applies, the court will still order disclosure if the plaintiff demonstrates a "particularized need" that outweighs

---

[5] Ultimately, to prevail on his assertion of prosecutorial vindictiveness, a defendant must show that the prosecutor acted with genuine animus toward the defendant, and the defendant would not have been prosecuted but for that animus. *United States v. Wilson,* 262 F.3d 305, 314 (4th Cir.2001). If a defendant cannot produce direct evidence of a vindictive motive, he can establish a rebuttable presumption of vindictiveness by showing that a "reasonable likelihood of vindictiveness exists." *United States v. Goodwin,* 457 U.S. 368, 373(1982). If he succeeds, the burden then shifts to the Government to present objective evidence justifying its conduct. *Id.* at 374. The evidence is viewed, however, in the context of the "presumption of regularity" that attends decisions to prosecute. *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (citation omitted). Thus, "in the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file ... generally rests entirely in his discretion." *Id.* (internal quotations omitted).

[6] A two-step inquiry is used to determine whether information is protected from disclosure under the privilege. First, the governmental agency must show that the privilege applies. The privilege only applies to "pre-decisional" and "deliberative" matters. Communications are pre-decisional if the information was generated before the adoption of an agency policy, and deliberative if they involve the give and take of the consultative process. *Sandholm v. Dixon Public School Dist. No. 170* , 2010 WL 899032, 3 (N.D.Ill.,2010).

6

the defendant's need for confidentiality. *Id.* at *3.

The Government also asserts the work product doctrine and the attorney-client privilege. In order to protect work product, the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., because of the prospect of litigation. *See Binks Mfg. Co. v. Nat'l Presto Indus., Inc.,* 709 F.2d 1109, 1118-19 (7th Cir.1983). Work product is not discoverable unless the party seeking discovery has a substantial need for the materials and cannot obtain the substantial equivalent through other means. *See* Fed.R.Civ.P. 26(b)(3). The doctrine applies in criminal as well as civil cases. *United States v. Nobles,* 422 U.S. 225 (1975); see generally Fed.Crim.R.P. 16(a)(1)(E). Moreover, neither the attorney-client privilege nor the work product doctrine is absolute, and both are subject to exceptions.[7]

In this case, both the rationales of the privileges themselves and the need for the disclosure in this case override the application of the privileges to the documents ordered to be produced. Here, the Court is faced with an alleged constitutional violation; vindictive prosecution presents potential prejudice of great magnitude to Jarrett. The allegations Jarrett makes, for which this court has already found a "colorable" basis, are allegations founded on governmental misconduct. And thus, while the privilege has a sound basis in theory, that theory must be overridden in an instance such as this where the sole way for a defendant to prove his allegation of government misconduct (absent a public statement from the government) is through its recordkeeping and documents typically protected by the privilege. *See, In re Sealed Case*, 121 F.3d 729, 738 (D.C.Cir.1997)

---

[7]It is not a far stretch to draw an analogy between the allegations made here by Jarrett (i.e., allegations of abuse of government power and attorney misconduct) and those types of allegations sufficient to apply the crime/fraud exception to the attorney-client privilege. Indeed, communications between an attorney and a client, otherwise privileged, are not protected by the attorney-client privilege or work-product doctrine if they are made in furtherance of a crime or fraud.

7

("[W]here there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government.").

Indeed, the Seventh Circuit stated in no uncertain terms that Jarrett's circumstantial evidence was insufficient without proof of "actual vindictiveness." *See United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir.2006) ("Only after a defendant comes forward with objective evidence of actual vindictiveness does the burden shift to the government to show that the motivation behind the charges was proper."). But, "[i]t is generally agreed that a "finding of actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor, which is available 'only in rare cases.' " *United States v. Johnson,* 171 F.3d 139, 140 (2nd Cir.1999). Here, the only method for Jarrett, who, it must be repeated, has already met the threshold for discovery by Order of this Court, to uncover evidence sufficient to prove his claim is in the deliberative process of the Government as evidenced through its internal communications. Certainly the privileges relied upon by the Government here were not intended to justify otherwise illegal actions and violations of the due process clause by shielding the Government behind its own work product and process. Thus, this Court concludes that under the unique context of this case, the policy rationale underlying the privileges asserted are inapplicable.

Further, even if this court determined that the privileges asserted by the Government did, in fact, apply, the Court would still require the documents to be produced since the court finds that the defendant has made a sufficient showing of the need for the material that outweighs the Government's interest in non-disclosure. Moreover, it is important to point out that this Court is not altogether unsympathetic to the Government's position and has taken great precautions to make

certain that only information that may bear on Jarrett's claim be produced. The Government submitted hundreds of documents for *in camera* review and this Court's order, sensitive to the privileges typically afforded to the Government, substantially limited the documents that were required to be produced to the defendant and his counsel.

Finally, with respect to the Government's argument that the Seventh Circuit's Opinion on Jarrett's appeal is law of the case, thereby foreclosing further discovery on the vindictive prosecution claim, the court finds that position without merit.

Based on the foregoing, the Government is hereby ORDERED to produce the remaining documents to the Defendant within fifteen (15) days. The Government also requests a protective order as to all documents produced to Jarrett. The Government, after consultation with defense counsel shall, within fifteen (15) days, submit an agreed form of Order for signature as to that request

SO ORDERED.

This 20th day of April 2010.

s/ William C. Lee
United States District Judge